UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ANDREW DORIA,<br><br>Plaintiff,<br><br>v.<br><br>ARNO NAPPI, et al.,<br><br>Defendants. | No. 2:12-cv-0575-EFB P<br><br><br><br>ORDER[1] |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983, against defendants Nappi, Schiller, and Leatherman. He alleges deliberate indifference to his safety as to all defendants, excessive force as to Schiller, and unlawful retaliation as to Leatherman. Defendants Schiller and Nappi move for summary judgment. ECF No. 56. For the reasons provided below, their motion is granted.

**I.   Background**

This action proceeds on plaintiff's original and verified complaint. Complaint ("ECF No. 1"). At all times relevant to this action, plaintiff was housed in Building One at California State Prison, Sacramento. *Id.* ¶ 3. According to plaintiff, Building One is known as a "Southern"

---

[1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent. E.D. Cal. Local Rules, Appx. A, at (k).

1

1    building, and plaintiff identifies himself as a "Southerner." *Id.* ¶ 4. Plaintiff alleges that Mexican
2    inmates from Northern California are enemies of the Southerners. *Id.* ¶ 3.

3        Plaintiff claims that on June 29, 2010, defendant Leatherman, a correctional officer, called
4    plaintiff out of his cell. *Id.* ¶ 4. Leatherman allegedly informed plaintiff that defendant Nappi,
5    the law librarian, had asked that plaintiff be sent to the library as a Privileged Law User (PLU).
6    *Id.* According to plaintiff, Nappi knew that plaintiff was from Building One, and thus, also knew
7    that plaintiff was a Southerner. *Id.* ¶ 5. Plaintiff claims that Nappi also knew that plaintiff would
8    be assaulted if he entered the library on a day it was being used by "Northerners." *Id.* ¶ 5.

9        Defendant Schiller, a correctional officer, admitted plaintiff into the library. *Id.* Plaintiff
10   claims that Schiller knew plaintiff was coming from a "Southern" building, and that only
11   "Northerners" were in the library at the time. *Id.* ¶ 4. Plaintiff claims that after entering the
12   library, he was "brutally assaulted" by a Northern Mexican inmate with a prison-made knife and
13   stabbed five times in the face. *Id.* ¶ 6. Schiller apparently responded to the scene, sprayed
14   plaintiff with mace, and took plaintiff to the hospital for treatment of his "disfiguring" wounds.
15   *Id.* Plaintiff claims that Schiller knew plaintiff was at risk of being assaulted if he entered the
16   library. *Id.* ¶ 4.

17       Plaintiff alleges that Leatherman also knew about the risk of harm to plaintiff if plaintiff
18   entered the library on a Northern Day, because only several days prior, Leatherman refused to
19   honor Nappi's request to send plaintiff to the library because it was a Northern Day, which posed
20   a threat to plaintiff's safety. *Id.* ¶ 3. In addition, plaintiff alleges that after the June 29 assault, he
21   asked Leatherman, "Why did you let me out to the law library when you knew it was a Northern
22   Day and knew I would get assaulted?" *Id.* ¶ 7. Leatherman allegedly laughed and said, "That's
23   how we deal with inmates that file [internal affairs] complaints. Besides, the librarian called you
24   out to the library, so I'm covered. You're lucky that is all that happened to you. File another
25   complaint and see what happens next time." *Id.*

26       This action proceeds on an Eighth Amendment excessive force claim against Schiller, a
27   First Amendment retaliation claim against Leatherman, and an Eighth Amendment deliberate
28   indifference to safety claim against all defendants. *See* ECF No. 11 (July 31, 2012 Screening

Order). Defendants Schiller and Nappi move for summary judgment. ECF No. 56. Plaintiff has filed an opposition[2] and defendants a reply.[3] ECF Nos. 65-68, 69.

## II. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if

---

[2] Plaintiff's request for appointment of counsel, contained within his opposition brief, is denied. *See* ECF No. 65 at 3. District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases. *Mallard v. United States Dist. Court*, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily to represent such a plaintiff. *See* 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990). When determining whether "exceptional circumstances" exist, the court must consider the likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Having considered those factors, the court finds there are no exceptional circumstances in this case.

[3] After the parties had fully briefed the summary judgment motion, plaintiff moved to amend his complaint. ECF No. 70. That motion is discussed below.

any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element

4

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

/////

/////

1  Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    Discussion**

**A. Deliberate Indifference to Safety Claim Against Schiller and Nappi**

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show that the injury is sufficiently serious, *id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and that the prison official was deliberately indifferent to the risk of harm, *id.* at 837. Thus, the relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 834 (internal quotation omitted).

To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. The "obviousness of a risk," however, is not conclusive, and "a prison official may demonstrate that the obvious escaped him . . . ." *Id.* at 843, n.8.

/////

/////

6

Schiller and Nappi claim they were not deliberately indifferent to plaintiff's safety in letting him go to the library, because neither of them knew that plaintiff was in any danger. Schiller submits a sworn declaration stating that on the day of the assault, he "let hundreds of inmates through the gate leading to the library at California State Prison, Sacramento." ECF No. 57-1 ("Schiller Decl.") ¶ 2. He states that he did not know plaintiff, his gang affiliation or even his ethnicity. *Id.* ¶¶ 5-6.

Defendant Nappi also submits a sworn declaration. He states that the only reason he called plaintiff to the library was in response to plaintiff's multiple requests for library access. ECF No. 57-2 ("Nappi Decl.") ¶ 2. Like Schiller, Nappi states that he did not know plaintiff, did not know plaintiff was Hispanic or that he was affiliated with the Southern Hispanic disruptive group, and that he did not associate plaintiff's name – James Andrew Doria – with Hispanic ethnicity. *Id.* ¶ 4.

Pointing to plaintiff's deposition testimony, defendants also note the following: (1) Southern Hispanics cannot be distinguished from Northern Hispanics by their appearance, ECF No. 57-3 ("Pl.'s Dep.") at 64:4-65:6; (2) not all Hispanic inmates affiliate with either the Southern Hispanic or Northern Hispanic disruptive groups, *id.* at 35:12-36:15; and (3) plaintiff's housing unit included inmates of various ethnicities, who did not affiliate with the Southern Hispanic disruptive group and who were not otherwise in danger from Northern Hispanics, *id.* at 34:23-35:11, 53:16-54:22.

Defendants have shown that they were not aware of any substantial risk of serious harm to plaintiff by allowing him to enter the library on June 29. Neither defendant knew plaintiff, let alone the fact that he was affiliated with the Southern Hispanic group. To Schiller, plaintiff was just one of hundreds of inmates who he allowed to enter the library that day. And Nappi only called plaintiff to the library in response to plaintiff's requests and had no reason to believe that plaintiff was a Southerner. The burden now shifts to plaintiff to demonstrate that a genuine dispute for trial exists as to defendants' alleged deliberate indifference. *See Anderson*, 477 U.S. at 248.

/////

Plaintiff first argues that his "bed card," located in the housing unit control tower, documented the fact that he is a Southerner. ECF No. 65 at 1-2. He claims that defendant Leatherman was aware of the bed card and knew about plaintiff's affiliation with the Southern Hispanic group. *Id.* at 2. Plaintiff's point about the bed cards, while potentially relevant to Leatherman's liability, does not create any dispute as to the liability of Schiller or Nappi.[4]

Plaintiff also responds that Schiller is liable because Schiller knew that plaintiff was coming from a Southern building and because it was Schiller's job to make sure that Northerners and Southerners did not enter the library at the same time. ECF No. 67 at 1. But plaintiff cites to no evidence showing that Schiller knew plaintiff had come from a Southern building. Even if he had, this would not create a genuine dispute for trial. Plaintiff testified that his housing unit included inmates of various ethnicities, who did not affiliate with the Southern Hispanic disruptive group and who were not otherwise in danger from Northern Hispanics. Plaintiff also testified that not all Hispanic inmates were affiliated with either the Southern Hispanic or Northern Hispanic groups. Thus, no reasonable juror could infer that Schiller was deliberately indifferent to plaintiff's safety by allowing him to enter the library simply because he knew that plaintiff had come from the "Southern" building.

Moreover, it is undisputed that Schiller did not know plaintiff, his gang affiliation or even his ethnicity. Though plaintiff argues it was Schiller's "job" to know such things, plaintiff cites to no evidence outlining Schiller's job duties, and Schiller stated in own declaration that his job duties did not include the investigation of inmates' potential gang affiliations. Schiller Decl. ¶ 3. Even if Schiller had "failed to [do] his job," as plaintiff asserts, such evidence would suggest at worst, that Schiller was negligent in allowing plaintiff to enter the library. An act of negligence falls far short of the culpability required for a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976) ("It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").

---

[4] Plaintiff filed a separate opposition to Leatherman's "Request for Summary Judgment." ECF No. 66. Leatherman, however, did not join in the motion or otherwise seek summary judgment on his own behalf.

As for Nappi's liability, plaintiff recounts a statement allegedly made to plaintiff by Leatherman. Leatherman allegedly told plaintiff on June 25, that he (Leatherman) had informed Nappi that plaintiff was a Southern inmate and that plaintiff would have to be scheduled for the library when it was not a Northern day. ECF No. 66 at 1. Plaintiff argues that Leatherman's statement shows that "Nappi was made aware . . . that plaintiff was a Southern inmate and could not be present with Northern inmates." ECF No. 68 at 1. Defendants' objection to Leatherman's statement as hearsay is sustained. ECF No. 69-1, ¶ 18. Leatherman's statement consists of two parts: first is Leatherman's statement to plaintiff, and within that statement is Leatherman's statement to Nappi. Leatherman's statement to Nappi is thus, "hearsay within hearsay" and only admissible if Leatherman's statement to plaintiff is non-hearsay or conforms with an exception to the hearsay rule. *See* Fed. R. Evid. 805. Leatherman's statement to plaintiff is inadmissible hearsay because it is an out of court statement offered against Nappi for the truth of the matter asserted. S*ee* Fed. R. Evid. 801(c)(2).

While Leatherman's statement may be offered as evidence against Leatherman as a party admission, which under Rule 801(d)(2) is not hearsay, it is simply not admissible as to Nappi. Because the first part of Leatherman's statement is inadmissible hearsay, the second layer – Leatherman's statement to Nappi – is also inadmissible. Moreover, plaintiff does not identify how he would show at trial that Leatherman ever made the statement to plaintiff recounting the statement allegedly made by Leatherman to Nappi. Without that, there is no basis for admitting the statements allegedly made by Leatherman. There is no declaration or other indication from Leatherman that he would testify at trial that he made the statements. Defendants Nappi and Leatherman specifically denied in their answers plaintiff's allegation that Nappi knew that plaintiff was a Southern inmate and that he would be assaulted if he attended the library on a Northern day. *See* ECF No. 20 ¶ 8; ECF No. 35 ¶ 8. Plaintiff, confronted with these denials, has not shown how his assertion that Leatherman in fact made the alleged statements could be presented in a form admissible at trial. *See*, *e.g.*, *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Without some form of admissible evidence that the statement was actually made by Leatherman, it could hardly constitute evidence upon which a jury could reasonably rely in

1  finding that Nappi knew of plaintiff's gang status when he was admitted into the library.
2  *Anderson*, 477 U.S. at 248, 252; *See also Celotex*, 477 U.S. at 323 (if the evidence presented and
3  any reasonable inferences that might be drawn from it could not support a judgment in favor of
4  the opposing party, there is no genuine issue).

5  Plaintiff also argues that Nappi should be liable on his Eighth Amendment claim because
6  the inmate who stabbed him was Nappi's inmate clerk. ECF No. 68 at 1. Nappi, however, is not
7  liable for the actions of his clerk. Plaintiff must demonstrate that there is a causal connection
8  between Nappi's conduct and the attack that took place. *See Hansen v. Black*, 885 F.2d 642, 646
9  (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). It remains undisputed
10 that Nappi only called plaintiff to the library in response to plaintiff's requests, that Nappi did not
11 know plaintiff, and that Nappi did not associate plaintiff's name with Hispanic ethnicity. The
12 mere fact that the inmate who stabbed plaintiff was Nappi's clerk is not a sufficient basis for
13 holding Nappi liable.

14 Plaintiff also claims that it is Nappi's job to "check [his] work area to make sure there are
15 no weapons." ECF No. 65 at 2. Plaintiff appears to urge a should-have-known standard rejected
16 in *Farmer v. Brennan*, 511 U.S. at 837. While plaintiff need not prove that Nappi "acted or failed
17 to act believing that harm would befall an inmate," plaintiff must nonetheless show that Nappi
18 acted or failed to act "despite his knowledge of a substantial risk of serious harm." *Id*. Plaintiff
19 cites to no evidence or authority as to Nappi's job duties. Whatever those duties entailed, there is
20 no evidence that Nappi failed to check his work area for weapons. Nor is there evidence that
21 Nappi had knowledge of a risk of harm. There is no evidence about where the weapon was found
22 or whether there are circumstances upon which a jury could reasonably find that, in spite of
23 Nappi's denial of knowledge, he must have known about its presence and the danger to plaintiff
24 and yet was deliberately indifferent to the danger. *See Farmer v. Brennan*, 511 U.S. 825, 843, n.8
25 (1994). Thus, even if checking his work area for weapons was part of his job, there is no
26 evidence linking any act or omission of Nappi to plaintiff being stabbed.

27 /////
28 /////

In sum, plaintiff has not produced evidence showing that either Schiller or Nappi knew that plaintiff would be in any danger by going to the library. Accordingly, Schiller and Nappi are entitled to summary judgment as to plaintiff's claim that they were deliberately indifferent to his safety.

### B. Excessive Force Claim Against Schiller

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7; *see also id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

Schiller contends that his use of pepper spray was necessary to break up the fight between plaintiff and the inmate who attacked plaintiff. In response, plaintiff concedes that the amount of forced used "was needed to stop the assault" and requests that his excessive force claim against Schiller be dismissed. ECF No. 67 at 1. There being no dispute as to whether Schiller used excessive force in violation of the Eighth Amendment, Schiller must be granted summary judgment as to this claim.

### IV. Plaintiff's Motion to Amend

On November 25, 2013, after the summary judgment motion was fully briefed, and long after the deadline for filing motions to amend had passed, plaintiff moved to amend his complaint. ECF No. 70. Plaintiff's motion was not accompanied by a proposed amended

1 complaint. *See id.* One month later, after defendants had opposed plaintiff's motion and noted
2 the absence of a proposed amended complaint, plaintiff submitted a proposed amended
3 complaint. ECF No. 74.
4       The scheduling order in this case set the deadline for filing a motion to amend as June 3,
5 2013. ECF No. 37 at 4. A scheduling order may be modified upon a showing of good cause.
6 Fed. R. Civ. P. 16(b). Good cause exists when the moving party demonstrates he cannot meet the
7 deadline despite exercising due diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,
8 609 (9th Cir. 1992). Plaintiff makes no effort to demonstrate that good cause supports his
9 requested modification of the schedule. On this basis, plaintiff's motion must be denied.
10       Even assuming good cause, the motion to amend must still be denied. It is apparent from
11 plaintiff's proposed amended complaint that the amendment would be futile. In screening the
12 initial complaint, the court found that plaintiff had stated a cognizable First Amendment claim
13 against defendant Leatherman, a cognizable Eighth Amendment excessive force claim against
14 defendant Schiller, and a cognizable Eighth Amendment deliberate indifference to safety claim
15 against defendants Leatherman, Schiller and Nappi. ECF No. 11 at 2.
16       In the proposed amended complaint, plaintiff asserts two causes of action, neither of
17 which is a First Amendment claim. It thus appears that plaintiff wishes to abandon his First
18 Amendment claim against Leatherman. If plaintiff wishes to so abandon this claim, he may so
19 inform the court at the time his pretrial statement is due. An amended complaint is not necessary
20 to effectuate the dismissal of this claim.
21       In the proposed amended complaint, plaintiff also abandons his claims against Schiller.
22 ECF No. 74, § III. Given the conclusion herein that Schiller is entitled to judgment as a matter of
23 law, plaintiff's proposed amendment to drop Schiller from the case is also unnecessary.
24       The first cause of action listed in the proposed amended complaint is an Eighth
25 Amendment claim of deliberate indifference to safety asserted against defendants Leatherman and
26 Nappi. *Id.*, § V. As noted, these same claims were included in plaintiff's original complaint, and
27 this action will proceed on the Eighth Amendment claim against defendant Leatherman. As for
28 defendant Leatherman, the proposed amendments are futile. There is no apparent purpose for

12

plaintiff's restatement of this claim in an amended complaint.  Plaintiff's proposed amendments are also futile as to defendant Nappi.  Plaintiff does not add any allegations that would change the conclusion herein that Nappi is entitled to judgment in his favor.  To the contrary, the proposed allegations against Nappi are couched in such equivocal terms that they fail to state a colorable claim for relief.  *See, e.g., id.* ¶¶ 20-22 (allegations as to what Nappi "knew or should have known").  As discussed above, a "should-have-known" mental state is not sufficient for purposes of stating a colorable Eighth Amendment claim.

The second cause of action listed in the proposed amended complaint is an Eighth Amendment claim against a proposed new defendant, Warden Tim Virga. *Id.*, § VI.  Plaintiff improperly attempts to impose liability on defendant Virga, solely because of his supervisory role.  He alleges no wrongful action on the part of Virga, only that he is "responsible for supervising, disciplining, and providing necessary training for all correctional officers and staff employed at CSP-Sac." *See id.* ¶¶ 8, 29-30.  Plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).  Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*  Plaintiff has not done so in his proposed amended complaint.  His unsupported and conclusory allegations that Warden Virga is somehow liable for defendant Leatherman or Nappi's alleged wrongdoing falls far short of what is required to demonstrate Virga's involvement or personal participation in any constitutional deprivation.

### V.     Order

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' motion for summary judgment (ECF No. 56) is granted and this action shall proceed solely on plaintiff's claims against defendant Leatherman.

2.  Plaintiff's motion to amend (ECF No. 70) is denied.

/////

/////

/////

3. The parties to this action shall each, no later than thirty (30) days from the date of the order, submit confidential statements as described below. The confidential statements shall not be served on the opposing party or filed with the court, but instead, delivered by mail, fax, email or personal delivery to the court's Alternative Dispute Resolution (ADR) division at the address, fax number or email address below and marked "Confidential." Such statements shall be limited to five (5) pages and shall include the following:

   a. The party's assessment of whether the instant action is of the type that would benefit from a settlement proceeding.
   b. The party's assessment of what factors, if any, will prevent settlement of this matter prior to trial; and
   c. Any additional information the court may find useful in determining whether to set this matter for a settlement conference.

Should the court determine that this action is appropriate for referral to the Prisoner Settlement Program, it will set this matter for settlement conference before a magistrate judge or district judge. If not, the court will direct the parties to file pretrial statements.

Dated: February 13, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

cc:  ADR Division, Attention: Sujean Park
     US District Court
     501 I Street, Suite 4-200
     Sacramento, CA 95814
     Fax: (916) 491-3912
     email: spark@caed.uscourts.gov